Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Pleased to have you here today on this beautiful, mild day in Phoenix. Before we begin with our oral argument, we have some housekeeping matters to take care of, specifically a number of cases to submit. They are Garibay-Melendez v. Garland, Gámez-Montoya v. Garland, Sorto-Portales v. Garland, Varela-Pedro v. Garland, Miranda-Leyva v. Garland, Kumar v. Garland. Those matters are now submitted officially, and we will now hear arguing the case of Hartzell v. Marana Unified School District. And I believe, Mr. Jones, you're up first. Good morning, Your Honors. Jacob Jones for the plaintiff, Appellant Rebecca Hartzell. I would like to reserve three minutes. I'll keep my eye on the clock. Please do. May it please the Court. The qualified immunity grant reviewed de novo should be reversed, and the First Amendment retaliation claim against Principal Diviak should be allowed to go to the jury because a reasonable principal in Diviak's position would have known it's unlawful to retaliate against a parent's protected speech by initiating a no-trespass order that categorically and indefinitely prevented that parent from accessing the limited public forum where other parents and the general public were invited to be present, including picking up and dropping off her students, et cetera. Counsel, as you know, in order for you to establish qualified immunity, you have to show that the other side knew, in this case the administrator, knew because of existing case law that was on point that what she did or was accused of doing was, in fact, a violation of the constitutional rights of Ms. Hartzell. What's the case that you refer us to that you think establishes that concept? At least the O'Brien case, Ninth Circuit. How does that help you? The 2016 case? Yeah. I'm sorry. Who versus O'Brien? I'm sorry. It was O'Brien versus Welty.  Thank you, counsel. It's cited in the opening brief. I think the language that I cited in the opening brief specifically speaks. I think that one has a more general statement, and I think the Kerensky case has a more specific application. Well, what's the court of appeal decision you would refer us to? So I – primarily I would refer, actually, to the obviously unlawful, but – because I think the obviously unlawful standard applies here. Well, with respect, as you know, the Supreme Court has some unusual jurisprudence about qualified immunity. And one thing they have made very clear is that the understanding of what is unconstitutional has to be very specific. It cannot be at a 30,000-foot level. I have seen no cases, and I don't think you have cited any appellate cases, and particularly not Ninth Circuit cases, that are really close to this situation. What have I missed? I agree this is a very rare situation. I don't think Your Honor has missed anything. I think the reason for the obviously unlawful standard is because some cases are just an appellate or even district court decision, and likely – Well, let me ask it this way. Is there any other way to show that the right is clearly established other than a case directly on point? Yes, there is, Your Honor. And how is that? By showing that the cases that are there are sufficiently particular to put the administrator on notice of the law. I'll give two pieces of example why I think that a reasonable inference could be drawn that she did know that. One, there's evidence in the record that she was actually trained that speech retaliation was not appropriate. Two, I would submit that in this unique case, our position is that she spoke an untruth to the law enforcement officer. And I would suggest that her reason for doing that, one could infer, is because she knew the real thing she was doing was unlawful such that she needed to cover it  Well, but, counsel, you yourself have used the term that this is a, in quotes, unique case. Doesn't that defeat your qualified immunity claim right off the bat? I don't think so, because I think that any principal would probably agree. Well, probably. I admit, you know, common sense, whatever. But the Supreme Court has been very clear. You have to have a case or cases at the appellate level so that it's precedential that shows that no reasonable officer in her situation would have any doubt that what she was doing violated the constitutional rights of Ms. Hartzell. I don't see those cases. I don't think you're telling us that there are. You're just saying, based on her training and the manual and so on, that she should have understood. But that doesn't meet the requirements of the Supreme Court's case law, does it? I think it could. And the reason is, I think the more recent Supreme Court case laws that my friend has cited are in a very different context. They're either in the 14th Amendment context. They're in the context of a police officer in a moment-by-moment scenario where the police ought to be able to protect her. There's a lot of scenarios and subversions of that. Those are the contexts, including whether an arrest supported by probable cause can, you know, can be protected by qualified immunity. And that question, whether or not that's protected by qualified immunity, has gone really all over the place in the last few days. I would certainly agree with you. Our court, like every other appellate court, groans under the number of qualified immunity cases that come to us based on law enforcement-claimed unconstitutional conduct. But that's not what we're dealing with here. We're dealing with a school administrator who's alleged to have done certain things, and it's your burden, if you're going to establish qualified immunity, to show that what was done was clearly unconstitutional and that, as a reasonable administrator, she would have known that. And I don't see how you meet that burden, counsel. So in the cases where they say we don't look at the administrator's subjective view, I think that goes back to a 1982 change in the law where, prior to that, a good faith belief of the administrator was a basis. And in 1982, we departed and said we no longer care about the subjective belief that it was in good faith. But I don't think that that change in 1982 made it so that we can't look at their subjective belief. What change are you referring to in 1982? I don't have it cited here. It's a little tangential. Is it a regulation? It was a Ninth Circuit. Is it a statute? What are you talking about? I didn't mean to talk over. It was a Ninth Circuit decision that I'm referring to that I believe was following a Supreme Court decision. It's a little off. But there was a — I'm describing the basis for why we see in our jurisprudence today that we don't look at the administrator's subjective belief. I don't believe there's any case that says we can't look at her subjective belief if evidence shows she actually believed it was unlawful. But you do agree that it's your burden, right? I agree. Okay. All right. Do you have other things? Let me just ask you this. In your First Amendment complaint, the district court held that you didn't put the school district on notice that your procedural due process claim contained a First Amendment theory. Paragraph 112 accused the district of censoring her speech. I guess — forgive me. I'm looking at my wrong note here. What I mean to say is you rely on paragraph 112 of your First Amendment complaint to show that the appellees were on notice that your procedural due process claim included a First Amendment theory. But you don't refer to First Amendment. You don't refer to retaliation. You don't identify what liberty or property interest is involved. Why was paragraph 12 sufficient to plead a procedural due process claim? Well, I think it's sufficient because I do believe it put them on notice that speech protection was at issue in the very few paragraphs that were under count three. Also, paragraphs 52 to 75 in the background section were under the title violation of due process rights. And when you read the complaint as a whole, which is 90 percent about First Amendment retaliation, I don't think a fair-minded reading of the pleading would allow one to conclude that no one knew First Amendment claims were part of the 14th Amendment substantive due process. And no one has asserted any prejudice. There's no discovery that was missed or opportunity. In fact —  Didn't you attempt to amend the complaint or seek to amend the complaint after losing that issue in summary judgment? So that means that the defendants had already litigated the case through summary judgment and prevailed. And so if you were allowed to amend two months after the summary judgment ruling, that just reopens the case. Why is that not prejudicial to them? I mean, there's some interest in finality in moving a case along. Agreed. And we're talking about — I believe that the original summary judgment order was erroneous before we talked about my motion to amend, which was to clarify. Unlike — and I really want to hit that — but unlike the Coleman case, the Coleman v. Quaker Oates case, which was cited against me, that involved a situation where the difference in the claims between disparate treatment and disparate impact involved an entirely different area of discovery. There was no argument by my friend that there was some discovery that they couldn't do. The only prejudice was argued that they wouldn't get the benefit of a summary judgment ruling, one that I thought was erroneous to begin with. So hadn't discovery closed at that point? It had. So if they did want some additional discovery, they're going to have to seek to reopen discovery, litigate motions again, and then push off the trial date. At that point, a trial date hadn't been set, even. And when it was set, it was set for about four or five months into the future. One thing, though, just taking a step back, what we're talking about is a First Amendment retaliation claim being the predicate of a due process claim. And I don't think anyone can argue that they were on notice to take discovery of the First Amendment retaliation claim. And they did. Well, they didn't issue any written discovery, but they took one deposition. And so I've yet to hear what discovery would have needed to be done differently such that the Coleman argument could apply. Kennedy. Counsel, what's our, if you will, standard of review for purposes of analyzing your paragraph 112 procedural due process claim? Is it de novo or an abuse of discretion? So I think that's a de novo review because what we're ultimately doing is reviewing the judge's grant of summary judgment, which was based on his reading of the complaint. And what case would you cite us to for that? Your Honor, I don't have one off the top of my head other than the general summary judgment grants are de novo review. I don't think there was any fact finding done here. And I do think that, as I mentioned, a fair-minded reading of the complaint draws aside from 112, which is fairly specific, and under count three. In addition, I think the issue has been conceded. No one has argued about why the Court's failure to even mention 112 in its analysis isn't an error. Okay. Can I take you back to the previous issue for a moment? With respect to qualified immunity, you've argued here this morning that even if there isn't case law that would put this principle beyond doubt so that any school administrator would know their conduct was unlawful, that it's obvious, that it was an obvious violation of your client's constitutional rights. Did you make that argument in the district court, and if so, where, and also in your briefs here? I don't remember seeing it. I'm not saying it's not there. We read a lot of briefs before this week. If it's there, it would be – I didn't have a chance to – so my only summary judgment briefing was on the response. So – and that's in the record. I believe my primary reliance was on the 2016 Ninth Circuit case to which they responded with the Supreme Court precedent that's been alluded to. So that was where it was. I believe that I said obvious in there, but I would want to look at my – So we could search for that word, and that would be sufficient to have developed the argument before the district judge? I don't think I needed to say the word obvious. Well, it's another theory to defeat qualified immunity. And in fairness, it should have been briefed before the district court if you wanted to defeat qualified immunity on that basis. I mean, we have pretty stringent rules about you can't just come up with a theory for the first time when you're standing in front of us at appellate argument. I think that my argument on summary judgment fairly read would include that I was arguing how obvious this factual scenario is, even if I didn't use the word obvious. I would like to reserve the right – Or the case law. There's a case law that talks about whether something's – when that standard applies. Any citations to the relevant case law? I may have. I could maybe address it when I get back up here. You want to save the rest of your time. Thank you. Very well. All right. Ms. Trudinger-Smith, please. Thank you. Good morning. Lisa Ann Trudinger-Smith on behalf of the Morana Unified School District and Principal Andrea Devejack and her husband. I will start with the question that you were just ending with – not that you were just And specifically, I mean, when we look at paragraph 112 of the complaint, it does not put anyone on notice that he was arguing that the First Amendment retaliation was a part of the due process claim. There's no doubt about the fact that this case involves First Amendment retaliation. It's clearly articulated in count one of the complaint. Count three of the complaint clearly articulates a due process claim, and it says that she was deprived of her fundamental right to be – well, to direct the upbringing of her children without due process of law. That's what it says. And if you look at paragraph 112, it says, That's all it says. It doesn't talk about retaliation for engaging in speech. And when you look at the case law about vague standards, you still have to prove that the person was deprived of a fundamental property or liberty interest. And really, I mean, what the Court – the Court ruled very simply on this argument. He did not establish any fundamental liberty interest in being on your child's campus, that that's not subsumed within the general right. And therefore, count three due process claim was properly read by the Court as not including a right to have due process before your First Amendment – before you're retaliated against for engaging in First Amendment, which, I mean, doesn't really make sense anyway. In fact, there's another case, the Hurt case, which I believe he actually cites in the 12 cases that he says we didn't respond to. And it says you – it says, You can't retaliate against someone for engaging in First Amendment speech just because you give them due process first. Counsel, let me switch you a little bit to a slightly different issue.  Policy KFA punishes speech that the district deems, in quotes, offensive or inappropriate. But even if the school has authority to regulate student speech, which is different here, why is that policy constitutional as applied to a conversation between a parent and a school administrator? Okay. That's a good question. And the KFA says that no person shall engage in conduct that may cause interference with or disruption of an educational institution. And then it goes on to explain how a parent could – or a person, because that policy relates to members – you know, anyone who's not a student, really, involves other people. And it says a person may also interfere with or disrupt the district function by committing any of the following. And then one of them is use of speech or language that is so offensive or inappropriate to the limited form of the public school educational environment. So speech is only covered by KFA if it is so offensive that it's inappropriate to the limited form of the public school, which no one thinks that happened here. We respect the fact that when you're talking about an environment with a lot of little children around, get it. We understand that the school is a different kind of a place. But here you're talking about a conversation between a parent who is upset and a school administrator who's dealt with her before who is also upset. However unfortunate that may be, as a First Amendment-focused kind of person, I'm really troubled by this limitation, the offensive or inappropriate. Who makes that standard? If you look at the record, Hartzell proffers some testimony that at least one district employee found her speech offensive and that thereafter she was banned. Why wouldn't that be sufficient for a reasonable jury to find that the KFC policy was the moving force behind the ban? Well, first, the court found that the policy wasn't unconstitutional, and that's a matter of law. It was what? The policy itself is not unconstitutional. Well, we may or may not agree with the court, okay? I understand that. But the reality is, let's assume arguendo, that when you're talking about undefined concepts of what is offensive or inappropriate, you're on shaky ground. Okay. So you're in a special environment. I get that. My question, though, is it seems like, at least the allegations were, that Hartzell got banned after somebody found her speech offensive. Why couldn't a jury determine that it was the KFC policy that was the moving force behind the ban? Okay, so two things. And so the court, as you know, ruled on this after the court heard the evidence. And the policy permits that ban only if that speech that you're talking about interferes with or disrupts the district's function. And in what way did that happen? Pardon me? And in what way did that happen? It did not. Okay, so why was she banned? Well, she was banned because she grabbed the principal. Well, there's a dispute about that. I understand. And why isn't that a jury question? I mean, there's a video, and the video seems to corroborate Ms. Hartzell's point. She bumped her, didn't grab her. But it's a question of fact, right? True. There's another video, which you also have, in which she tells the police, I put my hand on her and said, don't walk away while I'm talking to you. Okay, well, let's say that's true. Why is not this whole thing a jury question? In other words, if the policy KFA was the underlying legal basis that the district relied upon to ban a mother from entering on the campus where her children were there, that's a tough issue. That's a really tough issue. And what I want to know is why isn't the factual dispute a jury question, not a judicial question? Because there weren't any facts at trial, not one, to show that the banning of Dr. Hartzell had anything to do with the policy. Well, I don't think so. I think there was some testimony that Hartzell produced that one district employee found her speech offensive, and that was the reason why. And there was an assistant superintendent who testified that this policy would not allow that kind of ban. Okay, but you've got a dispute of fact. The policy, well, if you look at the words on the policy, it doesn't allow anyone to ban a parent from school, period. So how can a ban of the parent be pursuant to the policy when the policy does not permit a parent to be banned from campus? Well, then, let me ask you this. Let's just say arguendo that Ms. Hartzell inappropriately grasped the administrator's hand, but she's thereafter banned. Are you saying that because of that, that you can ban a parent from the district under a criminal statute for some period of time? Is that what you're saying? I'm sorry. I'm not sure what you're asking me. Ms. Hartzell was banned from the school district based upon a criminal statute, right? The claim was she had violated a criminal statute, right? That's what the police determined. We called the police. We called the police. And you based it on what? You based it on your policy, right? No. What did you base it on? The fact that the principal was upset because she, her felt, what she felt and what happened according to what Dr. Hartzell told the police. So if the principal is upset, she's dealt with this woman before, she doesn't like her, she touches her, she calls the police, she gets arrested, she gets charged, and she's banned from the campus for some period of time. Right. That's heavy duty stuff. But there's no evidence. There was no evidence produced at trial that the principal knew about this policy, looked at this policy, relied on this policy. Then on what did she base it? She didn't base it on anything because her staff called the police. What was her right to ban this woman from the campus? Well, I mean, there you're back to a dispute of facts. She didn't ban the principal. Didn't just go to the jury? I mean, she didn't ban the parent. But I think that the question here is, is did the, was she banned pursuant to this policy? What policies was she banned on if not this one? None. No policy. She was banned on no policy. Correct. So basically the principal can say or the administrator can call the police and say, this woman has touched me, I want her banned for three years. And that would make her a rogue decision maker, but it wouldn't lead to municipal liability. Because this is about municipal liability. And the district can only. Just a minute. So not to be a rogue administrator, then the principal has to have some basis to, to issue a ban, right? Is that right? I mean, some, you know, rational basis. I mean. I think the contention here is that the rational basis is this policy KFA. Well, what other rational basis is there? Well, again, I mean. Well, what other rational basis is there that the principal invoked? That she was grabbed by the parent during a conversation. She was what? Grabbed. All right. And that's a question of fact that should go to the jury, isn't it? It should, but the. So you can't grant summary judgment on that ground. Is there any other ground that you depend on? Well, this isn't summary judgment. This is a rule 50 motion. Or rule 50 motion. You can't depend on a rule 50 motion. And the court found and correctly that, and I understand that you may disagree, but that the policy is not unconstitutional because it does not allow a parent to be banned. But also the policy. Well, just a minute. You're getting ahead of my question. I think getting ahead of yourself. What did the principal depend on to exercise her power of banishment? If not this policy, what did she, where did that right arise from? Nothing. So it was completely arbitrary? No, because. Well, she must have some right to do it. She spoke to the police officer. And according to the police, they indicated, actually not even her, there's nothing in there that says it was her, that school wants you trespassed. The police issued a no trespass in connection with charging her. Didn't they issue that in effect at the request of the school? They say that the school asked for it, but there was no evidence about who did. But, yes, they do say that. So, again, I mean, we go back to the principal's banishment. Yes. Which is, you know, exclusion from school. What is the basis of that decision if it's not the KFA policy? Well, what right does she have to do that? Maybe she doesn't. But the question is. So, in other words, it's a fair argument for the plaintiffs, would have been a fair argument for the plaintiffs to make that the principal's decision was completely arbitrary because it was not based on any policy of the school? Perhaps, but they didn't ever make that argument. But that's your defense now. It was not based on any policy. My defense is that the municipality cannot have liability unless the banishment was pursuant to a policy. And the only policy does not permit the banishment. So, therefore, the municipality cannot be responsible for what the principal did or didn't do, but for this allegation because it wasn't pursuant to a policy. I think there's a disconnect between the panel and between you with respect to what was the basis of the trespass and the order that Dr. Hertz will not come onto the campus. So, if I understand what you're saying is it wasn't based on policy because the policy didn't allow that. But if a parent or another person comes into the school and assaults somebody or scrimps profanity in their face or grabs them or does any of these things, it may not be listed in any policy. Individuals involved seem to have some right to seek assistance from law enforcement to ask that the person not be allowed on the premises. It has nothing to do with the KFA policy. I mean, that's how I'm viewing what your argument is, is that this isn't a policy issue of municipal liability. This is an interaction in which somebody involved thought that law enforcement needed to be summonsed.  And although some of the circumstances that you described might possibly also invoke this policy, it wasn't. I mean, this case didn't, and this policy wasn't invoked, and the policy still wouldn't allow the trespass on it. It's just not in the policy. And so the municipality cannot be responsible for that because it's not pursuant to their policy. And what do you do with the fact that Ms. Hurchill claimed and asserted that a district employee found her speech offensive and that that's the reason why she was barred? Well, there isn't any even dotted line drawn between whatever district employee might have found the language offensive and someone asking the police to, you know, ban or to, yes, to give the no trespass order to Dr. Hurchill based on this interaction this day. They're just, the judge looked at the evidence and said there isn't any evidence to connect those allegations. What we had before us was this wasn't pursuant to this policy, and if it's not pursuant to this policy or a longstanding custom and practice, then the municipality cannot have liability. I mean, and it's just that. So why did she do it or could she do it or could someone else have not liked her or any of those things, whether or not they're true, they don't give rise to municipal liability. Okay. Other questions by my colleague? No, I'm fine. I'm sure we have lots more, but we thank you for your time. Thank you very much. Appreciate your argument. All right, Mr. Jones, you have a little rebuttal time. Thank you, Your Honor. I first wanted to address Judge Beatty's question on, I think it's 3ER546 is my summary judgment response on this point. I cited O'Brien, which is the first Ninth Circuit case I mentioned. It is a Ninth Circuit case. It's not a non-presidential case that says the constitutional right to be free from retaliation is clearly established. Then I cited Kransky, the other Ninth Circuit case that I opened with, 2010. Quote, the Court need not have decided a case on precisely analogous facts for a constitutional right to be considered clearly established. Now, in my room — Was that case prior to Al-Kid? It was. Al-Kid kind of overrides all that, doesn't it? I do think that there is a distinction where we have the first-order rights, as courts have called them, at issue here versus either Fourth Amendment rights, which are very confusing, or First Amendment in the context of a shoot-no-shoot situation. I do think it's very different. So as to whether I raised the issue, the question of obvious, I think the language in Kransky that I cited to the judge is almost identical to the obvious language that's been used elsewhere, which I cited in my reply brief here. You're relying on the citation to the case, but no development of the argument? There were no explanation to the district judge. By the way, their qualified immunity defense should fail because this is so obviously unconstitutional. Anybody would have known that. I mean, that's what I'm asking you, whether you made that argument. What I've argued is what I just cited to Your Honor. I had about six issues. I asked for oral argument. It was declined. I would have loved to have developed any of these points. Lastly, the KFA policy, I believe, was misquoted. It's in the record. It doesn't say so offensive. I think the Court knows what it is. Finally, Exhibit 25 is evidence that this principal is who requested the ban. I think it was mentioned that there was no evidence. I see that I'm over. I'm happy to answer any other questions. Other questions by my colleague? Nope. Thanks to both counsel for your argument. This is an interesting and challenging case, as you know. Unfortunately, this kind of thing is happening with greater and greater frequency. So we appreciate your helping us this morning to decide the case. The case just argued is submitted, and the Court stands adjourned for the day.
judges: TASHIMA, SMITH, BADE